# EXHIBIT A

DATED *November 27,* 2009

SETTLEMENT AGREEMENT AND RELEASE

BETWEEN

Codemasters ~~Inc~~ *Group Holdings Limited*

And

SouthPeak Interactive Corporation

<u>SETTLEMENT AGREEMENT</u>

THIS AGREEMENT is dated November 27 2009

PARTIES

(1) **CODEMASTERS GROUP HOLDINGS, LTD.** (Warwickshire, CV47 2ZT, United Kingdom) ("**Codemasters**")

(2) **SOUTHPEAK INTERACTIVE CORPORATION** (a Delaware corporation, Commission File Number 000-51869 whose registered office is 2900 Polo Parkway, Midlothian, Virginia 23113 ("**SouthPeak**")

BACKGROUND

(A) The parties have engaged in a business relationship, without a formal written contract in place for a number of years. Recently a dispute has arisen between the parties relating to the amounts of monies owed between the parties and the parties' respective obligations to one another ("**Dispute**").

(B) The parties have agreed to end their business relationship and fully and finally settle the Dispute and record the terms of settlement, on a confidential, binding basis, in this Agreement, without either party admitting to any fault.

AGREED TERMS

1. EFFECT OF THIS AGREEMENT

    The parties hereby agree that this Agreement shall immediately be fully and effectively binding on them.

2. PAYMENT

2.1 As consideration for this settlement and release, the sufficiency of which is hereby acknowledged, SouthPeak shall pay to Codemasters the total sum of US $2,000,000.00 (the "**Settlement Fee**"), less $200,000 already paid as at the date of this agreement divided into installments, as outlined below, payable by way of bank transfer to JP Morgan Chase Bank, 1411 Broadway New York, NY, 10018; Account #0321044216; ABA#021000021; Account Name: Rosenthal and Rosenthal, Inc. as follows:

    (a) the amount of US$100,000.00 to be paid within 2 days of signature of this Agreement by the parties;

    (b) the amount of US$100,000 to be paid on or before 30th November 2009; and

    (c) the amount of US$200,000 to be paid on or before 15th December 2009; and

    (d) the amount of US$200,000 to be paid on or before 31th December 2009; and

    (e) the amount of US$200,000 to be paid on or before 15th January 2010; and

    (f) the amount of US$250,000 to be paid on or before 31 January 2010; and

1

(g) the amount of US$250,000 to be paid on or before 15th February 2010;

(h) the amount of US$250,000 to be paid on or before 28th February 2010;

(i) the amount of US$250,000 to be paid on or before 15th March 2010;

2.2 As further consideration for this settlement and release, the sufficiency of which is hereby acknowledged, Codemasters shall execute and deliver to Southpeak, the Co-Publishing form attached hereto as Schedule 3, and incorporated herein by reference, as part of the full execution of this agreement. This obligation is material to the settlement and release by Southpeak.There will be a 10 business days day cure period for any late payment, upon thereafter Interest shall accrue and be payable by SouthPeak on any part of the Settlement Fee that is due, and not paid in accordance with clause at the rate of three percent (3%) per annum

3. CONDITIONS

3.1 Immediately upon the execution of this Agreement, SouthPeak shall:

(a) accept responsibility for all future customer markdowns and price protections on Codemasters titles that were shipped by SouthPeak to such customers. For avoidance of doubt, SouthPeak shall not be responsible for price protection and markdowns on titles that were not shipped and sold by SouthPeak. Only Southpeak shall be authorized to permit any price reduction or price protection to any of the customers that Southpeak shipped to, and shall do so at its sole discretion. In no event shall Codemasters agree to or issue any price protection, price reductions or any other form of merchandising allowances or discounts to the these customers for these products.

Southpeak shall assume the financial responsibility for every customer account that SouthPeak has sold and distributed "Codemasters' Product" (defined as physical packaged retail copies of "Grid" on XB360, PS3, PC and DS; "Overlord" PS3; "ROTA" on XB360, PS3 & PC; "Bella Sara" on DS & PC, "LSL" on XB360, PS3 & PC; and "Damnation" on XB360, PS3 & PC) and be responsible for all price protections, returns, discounts and markdowns approved by Southpeak in respect of those specific Codemasters' Product sold and distributed to those specific customers by SouthPeak. Southpeak agrees that Codmasters has no liability or responsibility in respect of such customers for the Codemasters' Product, and shall provide a letter stating this to Codemasters which is attached as schedule 2 to this agreement. Codemasters' agrees that Southpeak shall have no financial responsibility or obligation to price protect any games not included in the definition of Codemasters' Product. In the event that a customer informs Southpeak that it intends to pass through a deduction to Southpeak other than for a "Codemasters Product" that was sold and distributed by Southpeak to that specific customer. Southpeak shall notify Codemaster, and be provided with documentation that the obligation was

2



        satisfied, otherwise Southpeak shall be entitled to deduct the amounts from monies owed to Codemasters.. If no amount is currently due to Codemasters then Codemasters will repay SouthPeak for this deduction within 30 days.

    (b)  accept responsibility for any and all payment obligations, commissions and sums due to customers, agents and third parties in respect of those Codemasters' products sold and distributed by SouthPeak prior to the date of this Agreement.

3.2    Subject to Southpeak's compliance with the terms of this Agreement and in particular Southpeak's payment of those sums due under clause 2.1 of this Agreement, Codemasters shall hereto grant Southpeak the exclusive (as defined below), non-transferable, non-sublicensable right to distribute and remanufacture the Codemasters' Product set out in clause 3.1(a) of this Agreement, for a period of twelve (12) months only from the date of this Agreement, and restricted to the territory of the United States, Canada, and Mexico, for all customers and Southpeak shall become an authorized sub-publisher for the Products. Southpeak shall provide Codemasters with a purchase order for all Products Southpeak wishes to sell. Codemasters' invoice based on each purchase order provided by Southpeak shall be for Codemasters' actual out of pocket manufacturing cost, and third party licensing fees, plus a mark up of $1.00 per unit for PS3 and Xbox 360 units actually manufactured, and a mark up of $.50 per unit for all Nintendo DS and PC units actually manufactured. In the event the Southpeak pays the first party royalties for each of the aforementioned units, rather than Codemasters, Southpeak shall be entitled to deduct the cost of those royalties from that invoice. The $1.00 or $.50 charges mentioned above, including any actual out of pocket manufacturing cost, and third party licensing fees incurred by Codemasters as applicable, shall be paid in advance, concurrent with the purchase order to Codemasters, and prior to Codemasters' shipment of any units to Southpeak or if Southpeak is remanufacturing, prior to any manufacture of said units or delivery of units to Southpeak by first party platform licensor, whichever is the earlier. For the avoidance of doubt all shipments of Codemasters' Product are made firm sale to Southpeak and no returns, price protection or any other deduction can be recharged to Codemasters relating to Codemasters' product. If Southpeak is able to negotiate a savings on any first party royalty prices, such savings will be shared on an equal basis by each of the Parties. These rights identified in this clause 3.2 shall terminate immediately in the event of the insolvency of Southpeak or on failure of Southpeak to adhere to the payment schedule included in clause 2.1 above or upon any breach of the terms of this Agreement. Southpeak shall not (i) directly or indirectly solicit orders or commercially exploit in any way Codemasters' Products outside the Territory and (ii) manufacture Codemasters Products or establish any branch or maintain any distribution depot for the sale of Codemasters Products outside the Territory; (iii) directly or indirectly sell Codemasters Product to any person or entity Southpeak knows, or reasonably should know, is reselling Codemasters Product outside of the Territory and SouthPeak shall use its best endeavours to prevent any such sales outside the Territory. Rights not specifically granted to Southpeak herein are

3



expressly reserved by Codemasters including without limitation, digital distribution, OEM, online and bundling of Codemasters' Products.

3.3 Upon the full execution of this Agreement and receipt of the first 2 payments identified in clause 2.1 above, Codemasters shall immediately deliver to SouthPeak, subject to clause 3.4, at no additional charge, all those game units in Codemasters' inventory, listed in Schedule 1 of this Agreement.

3.4 Should the payments detailed in clause 2.1 (c) to (i) above not be received by Codemasters, subject to the cure period in Section 2.2 above, a charge of $10 per unit, for any unit provided to Southpeak under Schedule 1, attached hereto, will be levied by Codemasters on Southpeak which will be due within 30 days of the relevant invoice being raised, unless the product is returned, or Southpeak has subsequently made payment for the payment detailed above.

3.5 RELEASE

This Agreement is in full and final settlement of, and each party hereby releases and forever discharges, all and/or any actions, claims, rights, demands and set-offs, whether in this jurisdiction or any other, whether or not presently known to the parties or to the law, and whether in law or equity, that it, its parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers and directors or anY OF THem ever had, may have or hereafter can, shall or may have against the other party or any other of its parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors arising out of or connected with:

(a) the Dispute;

(b) any arrangement between or act by the parties, their parents, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors, or any of them; and

(c) any other matter arising out of or connected with the relationship between the parties.

(Collectively the "**Released Claims**")

4. AGREEMENT NOT TO SUE

Each party agrees, on behalf of itself and on behalf of its parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors, not to sue, commence, voluntarily aid in any way, prosecute or cause to be commenced or prosecuted against the other party or its parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors, any action, suit or other proceeding concerning the Released Claims, in this jurisdiction or any other.

4



5. COSTS

5.1 The parties shall each bear their own legal costs in relation to the Dispute and this Agreement.

5.2 This clause 6 supersedes and overrides any and all previous agreements between the parties and any court order regarding the legal costs in relation to the Dispute and in relation to this Agreement (including the implementation of all matters provided by this Agreement).

6. WARRANTIES AND AUTHORITY

6.1 Each party warrants and represents that it has not sold, transferred, assigned or otherwise disposed of its interest in the Released Claims.

6.2 Each party warrants and represents to the other with respect to itself that it has the full right, power and authority to execute, deliver and perform this Agreement.

7. INDEMNITIES

Each party hereby indemnifies, and shall keep indemnified, the other party against all costs and damages (including the entire legal expenses of the parties) incurred (i) in all future actions, claims and proceedings in respect of any of the Released Claims which they may bring against the other party or its parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors and (ii) in respect of such damages, costs and expenses incurred by the indemnified party arising from any breach by the indemnifying party of the distribution rights provision set out in clause 3.2 of this Agreement..

8. NO ADMISSION

This Agreement is entered into in connection with the compromise of disputed matters and in the light of other considerations. It is not, and shall not be represented or construed by the parties as, an admission of liability or wrongdoing on the part of either party to this Agreement or any other person or entity.

9. SEVERABILITY

If any provision of this Agreement is found to be void or unenforceable, that provision shall be deemed to be deleted from this Agreement and the remaining provisions of this Agreement shall continue in full force and effect and the parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this Agreement.

5

10. ENTIRE AGREEMENT

10.1 This Agreement constitutes the entire understanding and agreement between the parties in relation to the subject matter of this Agreement.

10.2 Each party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other party (whether orally or in writing) other than as expressly set out in this Agreement.

11. CONFIDENTIALITY

The terms of this Agreement, and the substance of all negotiations in connection with it, are confidential to the parties and their advisers, who shall not disclose them to, or otherwise communicate them to, any third party without the written consent of the other party other than:

(a) to the parties' respective auditors, insurers and lawyers on terms which preserve confidentiality; and

(b) pursuant to an order of a court of competent jurisdiction, or pursuant to any proper order or demand made by any competent authority or body where they are under a legal or regulatory obligation to make such a disclosure; and

(c) as far as necessary to implement and enforce any of the terms of this Agreement.

12. GOVERNING LAW AND JURISDICTION

This Agreement shall be governed by, and construed in accordance with, English law. Any dispute arising out of or in connection with, or concerning the carrying into effect of, this Agreement shall be subject to the exclusive jurisdiction of the High Court of England, and the parties hereby submit to the exclusive jurisdiction of that court for these purposes.

13. CONTRACTS (RIGHTS OF THIRD PARTIES)

13.1 The parties agree that the terms of this Agreement are not enforceable by any third party as a third party beneficiary.

14. CO-OPERATION

The parties shall deliver or cause to be delivered such instruments and other documents at such times and places as are reasonably necessary or desirable, and shall take any other action reasonably requested by the other party for the purpose of putting this Agreement into effect.

15. **COUNTERPARTS**

This Agreement may be signed in any number of counterparts, each of which, when signed, shall be an original and all of which together evidence the same agreement. For the purposes of completion, faxed signatures by the parties' legal advisers shall be binding. Any party who provides a faxed, signed counterpart to the other party on completion agrees to provide original, signed counterparts to the other party within fifteen (15) days of completion.

16. **VARIATION**

Any variation of this Agreement shall be in writing and signed by or on behalf of each party.

7





This Agreement has been entered into on the date stated at the beginning of it.

Signed by SIMON PARSONS
for and on behalf of THE
CODEMASTERS ~~SOFTWARE~~ Group
~~COMPANY~~ LIMITED
HOLDINGS

Director

Signed by TERRY PHILLIPS
for and on behalf of SOUTHPEAK
INTERACTIVE LLC

Director

8

Schedule 1

| Plant | Cust Sku # | Ditan Sku # | Part 1. Type | Part 2. Sku Desc | Part 3. | Part 4. | Part 5. Stock On Hand | Part 6. | Part 7. | Part 8. | Part 9. | Avail to Ship | Part 10. Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ind-002 | SARGOCDUS00 | 18040221 | MINI PC | PC-RISE OF THE ARGONAUTS | | 0 | 2700 | 0 | 0 | 0 | 0 | 2700 | 0 |
| Ind-002 | SARGOCDUS11 | 18040221WM | MINI PC | PC-RISE OF THE ARGONAUTS-WALMART | | 0 | 720 | 0 | 0 | 0 | 0 | 720 | 0 |
| Ind-002 | SARGOP3FC00 | 18040220 | PSX3 | PS3-RISE OF THE ARGONAUTS-FRENCH | | 0 | 1368 | 0 | 0 | 0 | 0 | 1368 | 0 |
| Ind-002 | SARGOP3US00 | 18040219 | PSX3 | PS3-RISE OF THE ARGONAUTS | | 0 | 3713 | 0 | 0 | 0 | 0 | 3714 | -1 |
| Ind-002 | SARGOX3FC00 | 18040224 | XBX360-12 | XB360-RISE OF THE ARGONAUTS-FRENCH | | 0 | 1520 | 0 | 0 | 0 | 0 | 1520 | 0 |
| Ind-002 | SARGOX3US00 | 18040223 | XBX360-12 | XB360-RISE OF THE ARGONAUTS | | 0 | 5148 | 0 | 0 | 0 | 0 | 5148 | 0 |
| Ind-002 | SARGOX3US00 | 18040223 | XBX360-12 | XB360-RISE OF THE ARGONAUTS | | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 0 |
| Ind-032 | SGRIDDSUS00 | 18040212 | NDS12 | NDS-GRID | | 0 | 755 | 0 | 0 | 0 | 0 | 755 | 0 |
| Ind-002 | SGRIDX3US00 | 18040210 | XBX360-30 | XB360-GRID | | 0 | 3161 | 0 | 0 | 0 | 0 | 3161 | 0 |
| Ind-002 | SOVLRP3US00 | 18040217 | PS3-24 | PS3-OVERLORD-RAISING HELL | | 0 | 6626 | 0 | 0 | 0 | 0 | 6626 | 0 |
| | | | | | | Total | 25714 | | | | | 25712 | |



**SOUTHPEAK**
INTERACTIVE

To whom it may concern:

SouthPeak Games is responsible for all markdowns and price protection on CodeMasters Product purchased from SouthPeak

SouthPeak agrees that CodeMasters has no liability or responsibility in respect of such customers for these CodeMasters products.

Sincerely,

Terry Phillips
Chairman
SouthPeak Games



**SONY**
COMPUTER ENTERTAINMENT ®

# Co-Publishing Information Form
PlayStation® and PlayStation®2

1 of 1

### BASIC INFORMATION

PRODUCT NUMBER: _____  TITLE: _____

PUBLISHER: _____  CO-PUBLISHER: _____

DEVELOPER: _____

SUBMISSIONS CONTACT: _____  PHONE: _____  FAX: _____

Platform: ☐ PlayStation®  ☐ PlayStation®2

### CORPORATE RESPONSIBILITIES

☐ First time shipping    ☐ Previously released: Royalty brand_____    ☐ Greatest Hits

VARIOUS MATERIALS (Please state which publisher will be submitting the following materials):

MANUFACTURING PURCHASE ORDER: _____

CERTIFICATE OF WHOLESALE PRICE (UNRELEASED PRODUCT ONLY): _____

CODE SUBMISSION TO SCEA: _____

PACKAGING SUBMISSION TO SCEA: _____

ALL MEDIUMS OF ADVERTISING: _____

ORIGINAL SHIP DATE OF PRODUCT IF PREVIOUSLY RELEASED PRODUCT: _____

### PUBLISHER SIGNATURES

By signing this form, both Publishers take full responsibility for the information provided. Both participating Publishers must sign this form.

PUBLISHER NAME: _Code Masters_    SIGNATURE: _____

PRINT NAME: _____    BUSINESS TITLE: _____

PUBLISHER NAME: _South Peak Games_    SIGNATURE: _[signed]_

PRINT NAME: _Terry Phillips_    BUSINESS TITLE: _Chairman_

### SUBMISSION

Please forward a copy of this completed form to:

SCEA
Attn: Production Assistant
919 E. Hillsdale Blvd.
Foster City, CA 94404
Phone 650.655.8000
Fax: 650.655.8185

Upon submission of this form, an Account Manager will be assigned to your product.

For SCEA office use only.
APPROVED BY (SIGNATURE): _____
SCEA ACCOUNT MANAGER